IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| **VALERIE JEAN STUART,**<br><br>             **Plaintiff,**<br><br>vs.<br><br>**REGIS CORP., dba SMARTSTYLE SALON, a Minnesota corporation; and KIMBERLY CHRISTENSEN, an individual,**<br><br>             **Defendants.** | **MEMORANDUM DECISION AND ORDER**<br><br><br>Case No.  1:05CV00016DAK |

This matter is before the court on Defendants Regis Corp., dba Smartstyle Salon ("Regis") and Kimberly Christensen's ("Christensen") Motion for Summary Judgment and Plaintiff Valerie Jean Stuart's ("Stuart") Motion for Partial Summary Judgment.  The court held a hearing on the motions on May 10, 2006.  Shortly before the hearing Stuart filed a Motion to Strike.  The court did not hear argument on the Motion to Strike, but took it under advisement.  At the hearing, April Hollingsworth and Elizabeth Peck represented Stuart.  Monique Tuttle and Amy Poulson represented Defendants.  Before the hearing, the court carefully considered the memoranda and other materials submitted by the parties.  Since taking the motions under advisement, the court has further considered the law and facts relating to the motions.  Now being fully advised, the court renders the following Memorandum Decision and Order related to

the motions before the court. For reasons stated below, Defendants' motion is granted and Plaintiff's motions are denied.

## BACKGROUND

The following facts are uncontroverted, deemed admitted, or, where disputed, viewed in the light most favorable to Plaintiff, the non-movant.

*Stuart's Employment With Regis*

Stuart was employed as the manager of the Harrisville, Utah SmartStyle[1] hair salon from February 2001 until September 20, 2002. After about six months, Stuart received the first of several written warnings from her direct supervisor Kimberly Christensen ("Christensen"), the Regis Area Supervisor. Occasionally, Christensen visited the salon and provided oral and written reviews of Stuart's performance and of the salon. In July 2001, Christensen again visited the salon and noted several areas that required improvement. In October, Stuart received a written warning for going over her monthly spending authorization in September, and Christensen placed a note in Stuart's file regarding items discussed at the salon visit, including issues with Stuart's conduct and attitude. From that time on, Christensen and Stuart did not have a good working relationship. Several months later, in January 2002, Christensen reviewed the salon, rating it satisfactory in only 40 of 68 categories. By June 2002, Cheridawn Kukes ("Kukes"), Christensen's Regional Manager and direct supervisor, was aware of the problems

---

[1]SmartStyle is a division of Regis Corporation, with hair salons located exclusively in Wal-Mart stores. For clarity, the court will refer to SmartStyle and/or Regis simply as Regis in this opinion.

2

between Stuart and Christensen.  In July 2002, Stuart received two more poor written reviews and warnings from Christensen.  As a result, she was placed on two separate 90-day probations for poor customer service, arguing with clients and for failing to keep the salon clean.

*Events Leading to Stuart's Termination*

On August 2, 2002, Stuart saw a doctor to follow-up on a knee injury and was released to work through August 16, with restrictions only on prolonged standing and repeated bending and stooping.  However, on August 3, Stuart did not report to work.  Instead, Stuart did some chores around her home and decided to take a long drive, eventually ending up in Nevada.  From her cell phone, Stuart left Christensen a voicemail message stating that she was having a mental breakdown and did not know where she was.  Stuart did not tell Christensen how long she would be gone, when she would return or how to reach her.  Stuart did not attempt to call Christensen on August 4th or 5th.  The next day, August 6, Stuart left a message for Christensen stating that she was in California.  Christensen called Stuart and offered FMLA leave, which Stuart accepted.

On August 7, Regis sent Stuart a letter approving twelve weeks of FMLA leave, August 3 through October 26, 2002, conditioned on the submittal of supporting medical documentation.

Stuart did not seek medical treatment from August 3 to 5, 2002, nor did she submit documentation to support FMLA leave for that period.  On August 6, Stuart went to the emergency room in California for back pain.  Stuart returned to Utah and received treatment for depression from Dr. Gardner.  She submitted FMLA medical documentation to Regis for the period of August 6 through September 24, 2002.

*Stuart's Return to Work*

At Stuart's request, Dr. Gardner released Stuart to return to work on a part-time basis on September 3, 2002.[2]  Regis immediately reinstated Stuart as manager of the salon.  At the time Stuart returned to work, Christensen was out of the country and asked another salon manager, Krysti Pignolet ("Pignolet") to answer her voicemail and check on the salons in her absence.  Pignolet reported to Christensen and Kukes that Stuart allegedly made negative and inappropriate statements about Christensen during their telephone conversations while Christensen was away.[3]

Within days of Christensen's returned to Utah, Christensen and Kukes left for a work-related trip.  While away, Christensen sought Kukes help in dealing with Stuart's breaches of Regis' attendance policy and perceived attitude problem.  They decided that based on Stuart's attitude and behavior Kukes would issue two written warnings to Stuart.

The first written warning concerned Stuart's August 3, 2002 breach of Regis' attendance policy.  Stuart was warned for leaving the salon unattended without letting Christensen know the circumstances of her leave and return on August 3rd, and for not securing the salon.  Stuart was governed by "The Regis Salons Manager's Reference Guide" (the "Guide") which explained that "managers who will be absent for more than 1 day or on a Saturday must contact their Supervisor."  The Guide also provides that employment may be terminated for "[v]iolation of

---

[2] Stuart did not need and was not ultimately medically required to take her full 12-weeks of leave through October 26, 2002, because she was released to work full-time by Dr. Gardner on September 24, 2002.

[3] The substance of the statements are both disputed and immaterial to the resolution of this motion.

4

salon or company policy or procedures." The second written warning related to negative comments Stuart allegedly made about Christensen and for Stuart's poor attitude.

On September 17, 2002, Christensen telephoned Stuart to inform her of the written warnings. During the call, Christensen found Stuart to be disrespectful. Based on Stuart's employment history, written warnings and September 17 telephone call, Kukes and Christensen terminated Stuart on September 20, 2002.

Stuart brought suit against Regis and Christensen claiming her termination was in violation of the Family Medical Leave Act ("FMLA") asserting an interference theory. Stuart also claims Regis failed to use progressive discipline in the termination process.

## STANDARD OF REVIEW

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P 56(c) (2005); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-250 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed.R.Civ.P.

56(e) (2005).  A fact in dispute is "material if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party." *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248).  "Only disputes over facts that might affect the outcome of the suit under the governing law will . . . preclude summary judgment." *Anderson*, 477 U.S. at 248.  There are no genuine issues for trial if the record taken as a whole would not persuade a rational trier of fact to find for the nonmoving party.  *See Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The court may not act as the jury and determine witness credibility when it examines the record upon a summary judgment motion. *See Windon Third Oil and Gas v. Federal Deposit Ins.*, 805 F.2d 342, 346 (10th Cir. 1986) cert. denied, 480 U.S. 947 (1987).  The court may consider only admissible evidence when ruling on a summary judgment motion.  *See World of Sleep, Inc. v. La-Z-Boy Chair Co.,* 756 F.2d 1467, 1474 (10th Cir. 1985).  The factual record and all reasonable inferences therefrom are construed in the light most favorable to the nonmoving party.  *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) cert. denied, 537 U.S. 816 (2002).

## DISCUSSION

### *Family Medical Leave Act*

The Family Medical Leave Act ("FMLA" or the "Act") establishes two categories of broad protections for employees.  First, the Act provides eligible employees of a covered employer the right to take unpaid leave for a period of up to twelve work weeks in any twelve-month period for a serious health condition as defined by the Act.  *See* 29 U.S.C. § 2612(a)(1).  After the period of qualified leave expires, the employee is entitled to be reinstated to the former

position or an equivalent one with the same benefits and terms of employment that existed prior to taking leave.  *See* 29 U.S.C. § 2614(a).  These substantive rights are protected by the guarantees found in § 2615(a)(1) where it makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided."  *Id.*; *see also Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002) (citing *King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir. 1999)) ("If an employer interferes with the FMLA-created right to medical leave or to reinstatement following leave, a deprivation of this right is a violation regardless of the employer's intent.").

> Employees are authorized under 29 U.S.C. § 2617(a) to bring an action to recover damages for violation of § 2615.  Courts have recognized two theories for recovery on FMLA claims under § 2615, the retaliation or discrimination theory and the entitlement or interference theory. . . .

*Smith*, 298 F.3d at 960.  "The entitlement or interference theory arises from § 2615(a)(1). . . ." *Id.*

To prevail on her interference claim, Stuart must show that she was denied a substantive right under the FMLA.  "To make out a prima facie claim of FMLA interference, plaintiff must establish that (1) she was entitled to FMLA leave; (2) defendants took some adverse action which interfered with her right to take FMLA leave; and (3) defendants' action was related to the exercise or attempted exercise of her FMLA rights."  *Mondaine v. American Drug Stores, Inc.*, 2006 WL 60671, *9 (D.Kan. Jan. 11, 2006); *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 877 (10th Cir. 1998); *Dry v. Boeing Co.,* 92 Fed. App'x 675, 678 (10th Cir. 2004).

The law in the Tenth Circuit is clear that a request for FMLA leave does not shelter an employee from her obligation to comply with company employment policies or provide her with

greater rights than an employee who does not request FMLA leave.  *See Bones*, 366 F.3d at 878; *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir. 1998).

Regis bears the burden to prove that no genuine issues of fact exists surrounding Stuart's termination and she "would have been dismissed regardless of the employee's request for, or taking of, FMLA leave."  *Smith*, 298 F.3d at 963 (explaining employer's burden under interference theory).  It is well established in the Tenth Circuit that "[a] reason for dismissal that is unrelated to a request for an FMLA leave will not support recovery under an interference theory."  *Bones*, 366 F.3d at, 877-78.  Because "an employee who requests FMLA leave would have no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting the request."  *Gunnell*, 152 F.3d at 1262; *Smith*, 298 F.3d at 961; *see also Dry*, 92 Fed. App'x at 677-78; *Renaud v. Wyoming Dept. of Family Serv's*, 203 F.3d 723, 732 (10th Cir. 2000).

In *Renaud v. Wyoming Dept. of Family Serv's*, the plaintiff was terminated for being drunk while at work, despite taking FMLA leave for treatment of alcoholism.  *Id.* at 732.  The plaintiff sued claiming the employer interfered with his FMLA rights.  *Id*.  The Tenth Circuit affirmed "conclud[ing] that an employee may be terminated if the action would have been taken in the absence of the FMLA request or leave."  *Taylor v. Smith's Food & Drug Centers, Inc.*, 127 Fed. Appx. 394, 396 (10th Cir. 2005) (quoting *Renaud*, 203 F.3d at 732).  The court finds that Regis satisfies this burden.

**Corporate Liability Against Regis**

Stuart claims that Regis interfered with her FMLA rights by requiring her to return to work before her twelve weeks of FMLA leave were exhausted and then by terminating her

employment.

The FMLA allows employers to require reasonable periodic reports on employee status and their intent to return to work. *See* 29 C.F.R. § 825.309(a) (noting that a "reduced leave schedule is a change in the employer's schedule for a period of time, normally from full-time to part-time"); *Holmes v. Boeing Co.*, 166 F.3d 1221, *3 (10th Cir. 1999). The regulations recognize that employees may need more or less time than requested. *See* 29 C.F.R. § 825.309(a). The FMLA also provides for a right to take leave on a reduced time basis. 29 C.F.R. § 825.203(a). Employers may also require medical documentation to support the need for leave. *See* 29 U.C.A. § 2614(c)(3)(A); 29 C.F.R. § 825.305(a).

Clearly Stuart is entitled to FMLA leave and undisputedly Regis granted her the leave she requested. Dr. Gardner released Stuart to return to work part-time from September 3 to 24, 2002. This release was at Stuart's request. Consistent with this release and the requirements of the FMLA, Regis immediately reinstated Stuart as salon manager and on a reduced schedule. *See* 29 .S.C. §2614(a)(1)(B); 29 C.F.R. § 825.214(a); *Hoge v. Honda of Am. Mfg. Inc.,* 384 F.3d 238, 47-79 (6th Cir. 2004). There is insufficient evidence in the record to indicate that the release to return to work part-time was in violation of any FMLA substantive right. Because there was no indication from Stuart or her doctor that she needed to continue her FMLA leave, Regis reasonably relied on Dr. Gardner's letter and returned Stuart to work on a reduced time basis, pursuant to its statutory obligations under the FMLA. *See Spaulding,* 279 F.3d at 909. Nor is there record evidence supporting Stuart's claim that she was warned and/or terminated because of her FMLA-related absences. The facts surrounding the manner and means of her communication with Regis during the first few days of her "breakdown" are not in dispute.

Regis attendance policies and salon manager duties are not in dispute, nor is the fact that Stuart received the September 17 warning for failing to properly communicate with Regis during the first few days of her "breakdown." The applicable Tenth Circuit case law recognizes that an employer may discipline an employee for failing to communicate properly with respect to absences, even if those absences are protected. *Renaud*, 203 F.3d at 732.

Stuart claims that she felt forced to return to work, however, assuming this to be true, Stuart lacks standing to bring an FMLA claim unless she suffered injury as a result of the alleged violation. *See Walker v. United Parcel Serv., Inc.*, 240 F.3d 1268, 1277-78 (10th Cir. 2001); *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982). The Supreme Court held that to recover under the FMLA the "injury" must result in actual monetary losses for a plaintiff to be entitled to damages. *See Nev. Dept. of Human Res. v. Hibbs*, 538 U.S. 721, 739-40 (2003). The evidence does not reflect that Stuart suffered any actual monetary losses. Stuart seeks wages, compensation and benefits, yet, Stuart admits she was not entitled to benefits during the relevant time period. Stuart's FMLA leave was unpaid and when she returned part-time she was paid in full for the time she worked. Stuart failed to show that material issues of fact exist that she suffered damages or is entitled to injunctive relief based on her claim that Regis violated the FMLA by forcing her to return to work. *See Walker*, 240 F.3d at 1278.

Regis claims that Stuart seeks equitable relief of employment, reinstatement or promotion flowing from the right of reinstatement after her leave was allegedly violated - not from her return to work. There is insufficient evidence to support an order of equitable relief under a claim of interference based upon Stuart's "return to part-time work" theory.

In an attempt to state a viable FMLA interference claim, Stuart also claims that termination interfered with her FMLA right to reinstatement. However, Stuart does not have a right to reinstatement because when terminated, Stuart had already been reinstated to the position she held prior to taking FMLA leave. Assuming *arguendo* Stuart were able to state a viable claim for interference, Stuart failed to provide support for the third element of her interference claim: a causal connection between her FMLA leave and termination. *See Smith,* 298 F.3d at 960; *Dry*, 92 Fed. App'x at 678.

Regis provided ample undisputed evidence that Stuart was terminated regardless of her request for FMLA leave and it was based upon her prior conduct, negative attitude and statements. According to Regis, Stuart was terminated pursuant to the well-established policies established in the Guide after she failed to report to work on August 3 and then failed to notify Christensen regarding the circumstances of her leave. Kukes issued the September 17th warning to Stuart for the manner in which she handled her early August absences, not her request for, or taking of, FMLA leave. The facts surrounding Stuart's breakdown and leave are not in dispute. Nor are Regis' attendance policies for managers, with which Stuart did not comply. "'[U]nder FMLA, an employee who requests leave or is on leave has no greater rights than an employee who remains at work.'" *Smith*, 298 F.3d at 961 (quoting *Gunnell*, 152 F.3d at 1262 (citing 29 C.F.R. § 825.216(a))). Regis' warned Stuart for not following Regis' procedures and then terminated her for being disrespectful when receiving the September 17 warnings.[4]

---

[4]Regis does not have required steps that must be taken or a time that must be followed in terms of discipline and termination. Although supervisory employees generally employ progressive discipline, an employee may be terminated without prior warning or after just one warning, depending upon her conduct. The Tenth Circuit recently affirmed the appropriateness

11

Even had Stuart not requested or taken FMLA leave, it is reasonable to believe that she would have received the written warning for her August 3-5 breach of Regis' attendance policy. Coupled with Stuart's behavior during the September 17 telephone call it is likely that Regis' decision to terminate Stuart would have happened regardless of the FMLA leave or request. This explanation is reasonable, non-discriminatory, and supported by the evidence. Under such circumstances, there is no viable claim for interference with FMLA rights. *See, e.g., Taylor,*, 127 Fed. App'x at 394; *Bones*, 366 F.3d at 878; *Chavez v. Thomas & Betts Corp.*, 396 F.3d 1088, 1104-05 (10th Cir. 2005).

Stuart claims that the legitimate reasons offered by Regis for termination were a pretext for discrimination. Stuart relies on the timing of her termination as establishing causation. Temporal proximity may be sufficient to establish causation for purposes of establishing a *prima facie* case of employment discrimination, but it is insufficient to demonstrate pretext where the employer has demonstrated a legitimate reason for an adverse employment action. *See Annett v. Univ. of Kansas*, 371 F.3d 1233, 1241 (10th Cir. 2004). This is insufficient evidence to show that Regis' stated reasons for warning or terminating Stuart were false and that the FMLA related absences were the real reason for Stuart's termination. As such, summary judgment is appropriate.

***Individual Liability Against Christensen***

Christensen does not qualify as an employer subject to personal liability under the

---

of this method for Regis in a strikingly similar unpublished opinion. *See Anderson v. Regis Corp.*, Slip Copy, 2006 WL 1739998 (C.A.10 (Colo.) June 27, 2006) (affirming grant of summary judgment).

FMLA. Under the FMLA, an "employer" includes "any person who acts, directly or indirectly, in the interest of the employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(I). FMLA regulations provide that this definition applies to "individuals as such 'corporate officers acting in the interest of an employer.'" 29 C.F.R. § 825.104(d); *see Williamson v. Deluxe Financial Services, Inc.*, 2005 WL 1593603, *9 (D.Kan. July 6, 2005) (noting same standard as "employer" under the Fair Labor Standards Act, 29 U.S.C. §203(d)). Christensen, an Area Supervisor, is a supervisory employee and does not have corporate responsibilities beyond her role as a supervisor. Christensen reported to Kukes, who reported up the corporate chain of command to John Exline, the Salon Director and Vice President of Operations for SmartStyle. Christensen never held a corporate officer position with Regis, nor did she "have sufficient responsibility or stature within [Regis] to warrant the imposition of personal liability under the FMLA." *See id.*; *see also Mondaine*, 408 F.Supp.2d at 1186-87. Individuals who have no corporate role beyond a managerial position are not employers under the FMLA. *See Mondaine,* 408 F.Supp.2d, at 1186; *Williamson*, 2005 WL 1593603, at *9. "[N]either the FLSA nor the FMLA were intended to impose liability on mere supervisory employees as opposed to owners, officers, etc." *Keene v. Rinaldi*, 127 F. Supp. 2d 770, 777 n.3 (M.D.N.C. 2000). Individual liability against Christensen is inappropriate in this case.

## CONCLUSION

Based upon the above reasoning, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment is GRANTED. Based on the court's grant of Defendants' Motion for Summary Judgment, Plaintiff's Motions for Partial Summary Judgment and to Strike are now moot. Therefore both of Plaintiff's motions are DENIED. Plaintiff's case is dismissed with

prejudice, each party to bear its and her own fees and costs.  The Clerk of Court is directed to enter judgment in favor of Defendant.

DATED this 10th day of July, 2006.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge